298 P.2d 821

Raymond A. KELLY and Mildred C. Kelly, his wife, Plaintiffs and Appellants,

v.

Wendell SCOTT, Anne Scott and William H. Thayne, d/b/a Thayne and Company, Defendants and Respondents.

No. 8403.

Supreme Court of Utah.

June 14, 1956.

Lewis S. Livingston, Salt Lake City, for appellants.

Peter M. Lowe, Alan H. Bishop, Salt Lake City, for respondents.

McDONOUGH, Chief Justice.

Appellants Kelly entered into a contract to sell a house and lot to respondents Scott in 1953, with respondent Thayne acting as real estate agent. The Scotts were in possession for a few months but being unable to make satisfactory arrangements for financing their purchase, they relinquished possession and paid rent for their time of occupancy. Respondent Thayne, who held the down payment of $3,500, returned to the parties amounts not in dispute, but retained $1,300, which the Kellys claimed as damages for the breach of contract—$800 as a broker's fee for which they alleged they were indebted to Thayne; $300 for damage to the premises; $200 attorney's fee. After a series of legal maneuvers taking place over a period of two years, pleadings were redrafted and dictated in pretrial and in a trial upon the merits the court concluded that the contract was subject to a condition precedent which was never met and restored the $1,300 to the respondents.

Under the earnest money receipt signed by the parties the total purchase price of the home was $16,000, "payable as follows: cash to a maximum loan." The trial court, viewing the term as ambiguous, heard evidence as to the intention of the parties at the time they entered the contract. No evidence was introduced to show any common usage and the two parties testi-

fied in their own behalf to justify vaguely their own definitions of the term. Appellants Kelly believed that the term required the Scotts to pay an amount in cash up to an amount where a lending institution would buy the contract. Respondents Scott intended to borrow, if possible, the remaining amount due on the contract and pay the Kellys in full. No time for full payment of the purchase price was set by the contract and Mrs. Scott testified that she and her husband were still trying to negotiate a loan on the property at the time that they received summons upon the complaint of appellants. Appellants urge that the condition of a reasonable time for payment must be read into the terms of the contract, but we cannot say that their action in bringing suit determined the reasonable time. It is just as logical to view appellants' action in seeking to avoid their obligations under the contract after three and one-half months, when they had received nearly a fourth of the purchase price, as a recognition that the contract was not intended to be binding if a loan were not secured. There is evidence upon which the trial court might find that the contract was conditioned or a tentative agreement to enter a final contract at a later date.

 Appellants further claim the amount of $300 regardless of the effect of the contract, contending that the same relationship which compelled the payment of rent for the time during which the Scotts were in possession requires that respondents pay appellants the cost of restoring and redecorating the premises to fit it for resale. The only evidence produced was through Mr. Kelly who testified that he painted the interior of the house in accordance with Mrs. Scott's requests before the Scotts moved in and felt that it was necessary to paper throughout before he again offered it for sale. There is no evidence of deterioration of the paint or any waste by the Scotts, nor, in fact, positive evidence that the wallpaper was necessary. The only actual damage to which Mr. Kelly testified was nail holes where drapery rods had been removed. Apparently the trial court regarded this as de minimus or as natural wear and tear which was compensated for by a portion of the $115 per month rental paid by the Scotts. We do not disagree with these conclusions.

A more serious point to be considered arises out of the legal entanglements resulting from a two-year pursuit of rights through a maze of motions, orders and default judgments prior to the trial on the merits. On March 4, 1954, a default judgment was entered against the Scotts with a "judgment over" against Kelly in favor of Thayne, who was made a party defendant, for his commission of $800. The default was set aside on the motion of Scott on February 7, 1955, by a judge other than the one finally hearing this case upon its merits. The broker, Thayne, appeared as a party in the trial on the merits on March 9, and took part in the argument upon the contract. However, when findings of fact and conclu-

sions of law were prepared denying him his commission on the grounds that he never produced an able and willing buyer to earn the commission, he objected to them. On March 23, he returned to the division of the court which had vacated the default judgment and received a nunc pro tunc order which recited that the clerk's records were not a correct memorial of the order rendered and should be corrected to show that the judgment in favor of Thayne remained in full force and effect. Thus, no findings or conclusions were entered in the final judgment pertaining to the allegations of the pleadings concerning Thayne's commission.

The pertinent paragraphs of the default judgment which was entered read:

"2. That the defendant, Thayne & Company, have judgment over against the plaintiffs in the amount of $800 representing the real estate commission.

"3. That this judgment shall be satisfied, except as to the costs, by the payment by Thayne & Company to itself of the amount of $800.00 from the $1300.00 held by it, as referred to in the Amended Complaint and Findings of Fact on file herein, and by payment of the balance of said $1,300.00, to-wit, the sum of $500.00 to the plaintiffs."

█ It is clear that the judgment for Thayne was based upon the default of the Scotts; the judgment for Thayne was to be paid out of the money given him by the Scotts and held by him for the Kellys; it was predicated upon the belief by both parties before the court that an enforceable contract between the Kellys and the Scotts existed. Under these circumstances, the default judgment should have been vacated in its entirety pursuant to a motion made by appellant, in accordance with Rule 60(b) (6), Utah Rules of Civil Procedure, U.C.A., 1953, Title 78:

"On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (6) * * * a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application".

Although this court has been reluctant to reverse a trial court on a decision not to vacate a default judgment and will not do so where it appears that all elements were considered, Warren v. Dixon Ranch Co., Utah, 260 P.2d 741, we have here the somewhat dubious advantage of viewing the entire confused record and there appear to be no equities, other than the time involved, which mitigate against the rule that discretion must be exercised in the furtherance of justice and that ordinarily the court should incline towards granting relief so that the matter might be heard on its merits. Although we disapprove of the unnecessary complications wrought in a relatively sim-

ple case, we feel that justice will better be served by setting aside the default judgment in its entirety and remanding the case for findings, conclusions, and judgment concerning the $800 claimed by Thayne as his commission. Each party to bear his own costs.

CROCKETT, WADE, and WORTHEN, JJ., concur.

HENRIOD, J., concurs in result.